FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 08, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PRISCILLA L.,[1] <br><br>            Plaintiff, <br><br>    vs. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br>           Defendant. | No. 1:18-cv-03112-MKD <br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT <br><br> ECF Nos. 15, 17 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 15, 17. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them only by their first names and the initial of their last names.

ORDER - 1

grants Plaintiff's Motion, ECF No. 15, and denies Defendant's Motion, ECF No. 17.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are

supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §

416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

the claimant's "residual functional capacity." Residual functional capacity (RFC),

defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. §

416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in

the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is

capable of performing past relevant work, the Commissioner must find that the

claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of

performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner

must also consider vocational factors such as the claimant's age, education and

past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of

adjusting to other work, the Commissioner must find that the claimant is not

disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to

other work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

**ALJ'S FINDINGS**

On February 28, 2013, Plaintiff filed an application for supplemental security income benefits, alleging an onset date of July 6, 2012. Tr. 291-96. The application was denied initially, Tr. 119-22, and on reconsideration, Tr. 126-29. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on January 29, 2015. Tr. 34-50. Plaintiff appeared at a supplemental hearing on January 31, 2017. Tr. 51-86. On July 6, 2017, the ALJ denied Plaintiff's claim. Tr. 12-32.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since February 28, 2013, the application date. Tr. 17. At step two, the ALJ found Plaintiff had the following severe impairments: arthropathies, curvature of the spine, and affective disorders. *Id.* At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically

equals the severity of a listed impairment.  Tr. 18.  The ALJ then found Plaintiff

had the RFC to perform light work with the following limitations:

> [Plaintiff can] lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk with normal breaks for a total of about two hours in an eight hour workday; sit with normal breaks for a total of about six hours in an eight hour workday; frequently climb ramps and stairs, but only occasionally ladders, ropes, and scaffolds; and avoid concentrated exposure to hazards, including dangerous machinery, unprotected heights, etc., and vibration.  [Plaintiff] is also capable of simple routine work tasks while maintaining concentration with customary breaks and lunch.  There should be no contact with the general public more than five minutes per occurrence for primary work tasks, but incidental contact with the general public is not precluded.  There should be no strict production rate pace work (where pace is mechanically controlled), but rather, goal oriented work (where pace is in more control of the worker).  [Plaintiff] may be off task about 10% over the course of an eight hour workday.

Tr. 19.

At step four, the ALJ found Plaintiff had no past relevant work.  Tr. 24.  At

step five, the ALJ found that, considering Plaintiff's age, education, work

experience, RFC, and testimony from a vocational expert, there were other jobs

that existed in significant numbers in the national economy that Plaintiff could

perform, such as escort vehicle driver and document preparer.  Tr. 24-25.  The ALJ

concluded Plaintiff was not under a disability from February 28, 2013, through

July 6, 2017, the date of the ALJ's decision.  Tr. 25.

On April 27, 2018, the Appeals Council denied review, Tr. 1-6, making the

ALJ's decision the Commissioner's final decision for purposes of judicial review.

*See* 42 U.S.C. § 1383(c)(3).

ORDER - 7

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 15. Plaintiff raises the following issues for this Court's review:

1.  Whether the ALJ properly evaluated the medical opinion evidence;

2.  Whether the ALJ properly identified Plaintiff's medically determinable impairments at step two; and

3.  Whether the ALJ properly evaluated Plaintiff's symptom testimony. ECF No. 15 at 1.

**DISCUSSION**

**A. Medical Opinion Evidence**

Plaintiff challenges the ALJ's consideration of the medical opinions of Leslie P. Schneider, Ph.D.; Celeste Wendler, M.S.; Amelia Rutter, ARNP; Elizabeth Dunbar, ARNP; Sandra Macias, MSW; Robert Hander, M.D.; and Patricia Kraft, Ph.D. ECF No. 15 at 6-16.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

ORDER - 8

Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995)). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

"Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (alteration in original); *see* 20 C.F.R. § 416.902 (2017) (acceptable medical sources are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, qualified speech-language pathologists, licensed audiologists, licensed advanced practice registered nurses, and licensed physician assistants). However, an ALJ is required to consider evidence from non-acceptable medical sources. 20 C.F.R. § 416.927(f). An ALJ may reject the opinion of a non-acceptable medical source by giving reasons germane to the opinion. *Ghanim*, 763 F.3d at 1161

### 1. Treating "Other Sources"

Plaintiff's treating providers rendered several opinions in the record. On March 26 and 27, 2013, Elizabeth Dunbar, ARNP, and Sandra Macias, MSW, jointly diagnosed Plaintiff with major depressive disorder, alcohol dependence in full sustained remission, cannabis abuse in full sustained remission, post traumatic stress disorder, club foot, scoliosis, chronic pain, and history of suicide attempts; opined Plaintiff had limitations in her ability to concentrate for extended periods of time, make repetitive motions, interact with people, attend vocational classes, sit for extended periods of time, complete job applications, retain memory, make and keep appointments, use transportation, participate in interviews, follow a written

employability plan, and advocate for herself; opined that Plaintiff was unable to participate in work; and opined that Plaintiff was a high risk for an on the job injury due to her issues with gait, balance, and pain. Tr. 495-98.

On June 23, 2014, Celeste Wendler, M.S., diagnosed Plaintiff with post traumatic stress disorder and major depressive disorder and opined Plaintiff was limited to 11-20 hours of work activities per week. Tr. 499-501.

On August 20, 2014, Amelia Rutter, ARNP, diagnosed Plaintiff with clubfoot, mild scoliosis causing chronic upper back and neck pain, and anxiety; opined Plaintiff impairments limited her ability to stand for long periods of time, bend over, and reach above; opined Plaintiff was limited to 1-10 hours of work activities per week; and opined Plaintiff was limited to sedentary work. Tr. 502-04.

The ALJ assigned these opinions little weight. Tr. 23. Because these individuals are not acceptable medical sources, the ALJ was required to provide germane reason to discredit them. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ considered these opinions collectively and concluded that all three reports were entitled to little weight because they listed little more than Plaintiff's diagnoses and subjective complaints. Tr. 23. The ALJ provided no other discussion of these opinions. *Id.* An opinion may be rejected if it based on a

claimant's subjective complaints which were properly discounted.  *Tonapetyan v.*
*Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Comm'r of Soc. Sec.*
*Admin.*, 169 F.3d 595, 602 (9th Cir. 1999); *Fair v. Bowen*, 885 F.2d 597, 604 (9th
Cir. 1989).  "[W]hen an opinion is not more heavily based on a patient's self-
reports than on clinical observations, [this] is no evidentiary basis for rejecting the
opinion."  *Ghanim*, 763 F.3d at 1162.

First, the ALJ's characterization that the "forms list little more than her
diagnoses and subjective complaints," Tr. 23, is factually inaccurate.  As detailed
*supra*, the forms assessed specific functional limitations regarding Plaintiff's
capabilities that the ALJ failed to address.

Next, the ALJ failed to acknowledge that Plaintiff received ongoing
treatment from the authors of these opinions.[2]  Tr. 23.  Ms. Wendler treated
Plaintiff from June 2013 through August 2013, and again from September 2014
through November 2014, and documented Plaintiff's progress in therapy in
treatment notes containing a combination of Plaintiff's symptom reporting and Ms.
Wendler's observations.  Tr. 443-61, 582, 592.  Ms. Rutter is listed as Plaintiff's
primary care provider throughout the record and the record contains her treatment

_____

[2] Although the record documents a treatment history, the record does not contain
treatment notes from Ms. Macias or Ms. Dunbar.

ORDER - 12

notes from June 2014 through November 2014. Tr. 540-47, 562-70. Ms. Rutter's treatment notes document objective observations of Plaintiff's physical condition. *Id.* Ms. Rutter was also sent copies of Plaintiff's mental health medication management treatment notes. *See, e.g.*, Tr. 680, 737, 742. The ALJ's summary conclusion that Ms. Wendler's and Ms. Rutter's opinions were a recitation of Plaintiff's symptom reporting rather than on treatment observations is not supported by substantial evidence.

The ALJ erred in evaluating the opinions of Plaintiff's treating providers. The ALJ is instructed reconsider these opinions on remand.[3] The ALJ is further instructed to take testimony from a medical expert regarding Plaintiff's physical and mental impairments.

_____

[3] Plaintiff also challenges the ALJ's decision to credit the opinions of reviewing physicians Dr. Hander and Dr. Kraft over the opinions of Plaintiff's treating providers. ECF No. 15 at 15-16; Tr. 23. The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews*, 53 F.3d at 1041. Because the ALJ is instructed throughout this order to reconsider the medical evidence and the medical opinion evidence, the ALJ is also instructed to reevaluate the reviewing physicians' opinions on remand.

ORDER - 13

*2. Dr. Schneider*

Dr. Schneider treated Plaintiff on August 8, 2013; diagnosed Plaintiff with pain disorder, post traumatic stress disorder, alcohol dependence in full sustained remission, and bipolar II disorder; stated Plaintiff "must take frequent breaks in doing many of her activities;" stated Plaintiff's "cognitive functioning shows some limitations, with many memory gaps;" and stated "it is hard for me to come up with ideas on what she could possibly do on a full-time, gainful employment basis." Tr. 518-23. The ALJ found Dr. Schneider's report did not constitute a "medical opinion" and assigned it minimal weight. Tr. 23.

"Medical opinions are statements from physician and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite your impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(1). An ALJ is not required to provide clear and convincing reasons for rejecting statements within medical records when those records do not reflect physical or mental limitations or otherwise provide information about the ability to work. *See, e.g.*, *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (where a physician's report did not assign any specific limitations or opinions regarding the claimant's ability to work, "the ALJ did not need to provide 'clear and convincing reasons' for rejecting [the] report because the ALJ did not

reject any of [the report's] conclusions."). Here, Dr. Schneider's statement appears to be a medical opinion that Plaintiff is unable to work. Tr. 522. Because this case is remanded for other reasons discussed *supra*, the ALJ is instructed to reconsider Dr. Schneider's opinion on remand.

**B. Step Two**

Plaintiff contends the ALJ failed to identify medically determinable impairments at step two. ECF No. 15 at 3-6.

At step two of the sequential process, the ALJ must determine whether claimant suffers from a "severe" medically determinable impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). To show a severe impairment, the claimant must first prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.921.

An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work...." Social Security Ruling (SSR) 85-28 at *3. Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities; which include walking, standing, sitting, lifting, pushing,

pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; using judgment; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 416.922; SSR 85-28.[4]

Step two is "a de minimus screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

Plaintiff challenges the ALJ's failure to identify obesity as a medically determinable impairment at step two. ECF No. 15 at 4. Obesity can be established as a medically determinable impairment when it is diagnosed by a treating source or a consultative examiner. SSR 02-1P, 2002 WL 34686281, at *3. Obesity is a severe impairment when it "significantly limits an individual's physical or mental

_____

[4] The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in SSR 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

ORDER - 16

ability to basic work activities." *Id.* at \*4.  To determine whether obesity is a

severe impairment, the ALJ must conduct an "individualized assessment of the

impact of obesity on an individual's functioning." *Id.*; *see also Celaya v. Halter*,

332 F.3d 1177, 1181-82 (9th Cir. 2003) (even where obesity does not meet listing

level severity, the ALJ must still consider its effects on a claimant's other

impairments).  Here, the record shows Plaintiff was diagnosed by treating

providers with obesity. *See, e.g.*, Tr. 487, 492, 538, 544.  However, the ALJ's

opinion fails to make any mention of obesity, much less make an individualized

assessment of its impact on Plaintiff's functioning.  Tr. 15-25.  This was error.

Ordinarily, the Court would engage in a harmless error analysis to determine

whether the ALJ's step two error was harmful.  However, because this case is

remanded to address the harmful errors discussed *supra*, the Court declines to

engage in harmless error analysis here.  The ALJ is instructed on remand to

reconsider the full medical record, take testimony from a medical expert, and to

specifically consider the impact of obesity on Plaintiff's other severe impairments.[5]

_____

[5] In light of this instruction, the Court declines to specifically address Plaintiff's

other assignments of error at step two.  ECF No. 15 at 5.

### C. Plaintiff's Symptom Testimony

Plaintiff contends the ALJ failed to rely on clear and convincing reasons to discredit her symptom testimony. ECF No. 15 at 16-20.

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16-3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim*, 763 F.3d at 1163 (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester*, 81 F.3d at 834); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the

ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 416.929(c). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the

intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the evidence.  Tr. 21.

### 1. Failure to Seek Treatment

The ALJ found Plaintiff's symptom testimony was inconsistent with her failure to seek treatment, despite consistent access to care.  Tr. 21-22. Unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may serve as a basis to discount the claimant's reported symptoms, unless there is a good reason for the failure.  *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).  Disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds. *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995).  However, evidence of a claimant's self-limitation and lack of motivation to seek treatment are appropriate considerations in determining the credibility of a claimant's subjective symptom reports.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001).  When there is no evidence suggesting that the failure to seek or participate in treatment is attributable to a mental impairment rather than a personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the alleged severity of complaints.  *Molina*, 674 F.3d at 1113-14. But when the evidence suggests lack of mental health treatment is partly due to a claimant's mental health condition, it may be inappropriate to consider a

ORDER - 20

claimant's lack of mental health treatment when evaluating the claimant's failure to participate in treatment. *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

Here, the ALJ noted that Plaintiff had gaps in her mental health treatment from late 2013 through September 2014, from April 2015 through November 2015, from November 2015 through March 2016, and again after May 2016. Tr. 22; *see* Tr. 463-75, 532-33, 576-92, 720-50. The ALJ also found that Plaintiff received no treatment for her physical conditions after 2014, aside from five physical therapy appointments in 2015. Tr. 21. The ALJ's finding inconsistently acknowledges Plaintiff's ongoing treatment yet characterizes these appointments as aberrations after a treatment cessation date the ALJ defines as occurring in 2014. *Id.* Additionally, although the ALJ found Plaintiff had continuous access to medical benefits, Plaintiff's treatment notes document her insurance repeatedly declined to cover her referrals to physical therapy. Tr. 21; *see* Tr. 514-17. Furthermore, Plaintiff's treatment notes indicate Plaintiff's failure to show for appointments was at times attributable to her mental impairments. *See* Tr. 514 (Plaintiff reported missing many appointments because her mental status declined severely); Tr. 724 (Plaintiff reported missing mental health appointments due to stress). On remand, the ALJ is instructed to consider the reasons identified in the record for Plaintiff's failure to seek treatment.

### 2. *Conservative Treatment*

The ALJ found Plaintiff's symptom testimony was inconsistent with her record of conservative treatment. Tr. 22. Evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding the severity of an impairment. *Parra v. Astrue*, 481 F.3d 742 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (treating ailments with an over-the-counter pain medication is evidence of conservative treatment sufficient to discount a claimant's testimony regarding the severity of an impairment)); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (holding that the ALJ permissibly inferred that the claimant's "pain was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program" and "responded favorably to conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset").

Here, the ALJ found Plaintiff's symptom allegations were inconsistent with her record of what the ALJ characterized as conservative treatment measures. Tr. 21; *see* Tr. 531 (April 24, 2013: Plaintiff prescribed cane, muscle relaxer, and referred to physical therapy); Tr. 423 (May 8, 2013: Plaintiff underwent trigger point injections); Tr. 420 (May 23, 2013: Plaintiff reported trigger point injections did not work and was referred to physical therapy); Tr. 426 (May 29, 2013:

Plaintiff underwent bilateral occipital nerve blocks). The Ninth Circuit has questioned whether occipital nerve block and trigger point injections can constitute "conservative treatment." *See Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010). The ALJ is instructed to take testimony from a medical expert and to reconsider this finding on remand.

### 3. Situational Stressors

The ALJ found Plaintiff's symptom testimony was attributable to situational stressors rather than disability. Tr. 22. An ALJ may reasonably find a claimant's symptom testimony less credible where the evidence "squarely support[s]" a finding that the claimant's impairments are attributable to situational stressors rather than impairments. *Wright v. Colvin*, No. 13-CV-3068-TOR, 2014 WL 3729142, at *5 (E.D. Wash. July 25, 2014) ("Plaintiff testified that she would likely be able to maintain full-time employment but for the 'overwhelming' stress caused by caring for her family members"). However, "because mental health conditions may presumably *cause* strained personal relations or other life stressors, the Court is not inclined to opine that one has caused the other based only on the fact that they occur simultaneously." *Brendan J. G. v. Comm'r, Soc. Sec. Admin.*, No. 6:17-CV-742-SI, 2018 WL 3090200, at *7 (D. Or. June 20, 2018) (emphasis in original).

The ALJ identified extra children in the home, loss of housing, loss of custody of her children, and deaths of family members as situational stressors as Plaintiff's biggest barriers to employment, which the ALJ found were unrelated to her impairments.  Tr. 22; *see* Tr. 446 (Plaintiff reported increased stress with having her 7-year-old niece staying with her); Tr. 449 (Plaintiff reported poor mental health due to running out of sleeping medications and having extra children in the house); Tr. 532 (Plaintiff reported daily depression symptoms for a year "because I don't have my kids"); Tr. 576 (Plaintiff reported having a breakdown after her aunt passed away); Tr. 667 (Plaintiff reported depression after her aunt's death, another aunt's cancer diagnosis, and a nephew's injury); Tr. 724 (Plaintiff reported increased stress and anxiety related to CPS involvement and child custody issues); Tr. 745 (Plaintiff reported increased stress with CPS involvement and needing to find her own place to live.  Provider observed Plaintiff's stress was "situational mostly around her housing/living situation.").  Here, Plaintiff's increased stress with death and illness among her family members may not be caused by Plaintiff's impairments.  However, Plaintiff's other stressors from child custody issues and living arrangements are less clearly separable from Plaintiff's mental impairments.  Unlike prior cases in this district, where the record clearly contained evidence that the claimant would have been capable of working but for the presence of a specific situational stressor, here Plaintiff's impairments and

situational stressors are more complex and intertwined. *See Wright*, 2014 WL 3729142, at *5. "The Court is not inclined to opine that one has caused the other based only on the fact that they occur simultaneously." *Brendan*, 2018 WL 3090200, at *7. Because this case is remanded for other reasons, the ALJ is instructed to reconsider this finding with the benefit of psychological expert testimony on remand.

### 4. *Other Findings*

The ALJ made other findings regarding the consistency of Plaintiff's symptom testimony with the medical evidence. Tr. 21-22. However, because this case is remanded for the ALJ to reconsider the evidence with the benefit of medical expert testimony, the Court declines to consider those findings here.

## REMEDY

Plaintiff urges the Court to remand this case for an immediate award of benefits. ECF No. 15 at 20.

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)). When the Court reverses an ALJ's decision for error, the Court "ordinarily must remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the

proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, in a number of Social Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met. *Garrison*, 759 F.3d at 1020 (citations omitted). Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, the Court will remand for an award of benefits. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017). Even where the three prongs have been satisfied, the Court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021. Here, as discussed throughout this order, further proceedings are necessary for the ALJ to consult a medical expert and to resolve outstanding conflicts in the evidence. Therefore, remand for an immediate award of benefits is not appropriate.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 15, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, ECF No. 17, is **DENIED**.

3. The Court enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED May 8, 2019.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE